UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  4:24-CV-10100

MICHAEL UMBERG,

      Plaintiff,

vs.

NOBLE HOUSE HOTELS & RESORTS, LTD.,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Michael Umberg, sues Defendant, Noble House Hotels & Resorts, LTD., for damages, declaratory relief, and/or recission as follows:

### Parties, Jurisdiction, and Venue

1.    **Plaintiff, Michael Umberg ("Mr. Umberg")** was and is a resident of Monroe County, Florida, at all times material, over 18 years old, and he is sui juris.

2.    **Defendant, Noble House Hotels & Resorts, LTD.,** is a *sui juris* for-profit Texas limited liability company with a principal place of business in Kirkland, Washington, maintains a hotel in Monroe County, Florida, and is subject to this Court's jurisdiction.

3.    This Court has jurisdiction over Mr. Umberg's claim brought under Fla. Stat.§440.205 based on diversity of jurisdiction under 28 U.S.C. §1331, and his claim for declaratory relief under federal law pursuant to 28 U.S.C. § 2201 and 29 U.S.C. §626, and pendent jurisdiction over his claim for equitable relief (rescission or reformation) under this Court's pendent jurisdiction.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(ii) because Defendant operated its hotel within this District, Mr. Umberg worked, was injured, and was retaliated against

1

by Defendant in this District, Mr. executed the agreement to be construed by the Court in this District, and all relevant actions occurred within this District.

Background Facts

5.      Mr. Umberg worked for the Defendant as a "Dockmaster" at its resorts in the Florida Keys, including Little Palm Island and Little Torch Key, beginning on or about September 13, 2022.

6.      Defendant's Little Palm Island resort is not accessible by land and so Defendant transports its employees, including Mr. Umberg, to and from the resort on one of its shuttle boats.

7.      Federal law requires persons who operate boats for hire, such as the shuttle boats operated by Defendant to transport its employees to and from Little Palm Island, to hold a Captains' License issued by the United States Coast Guard.

8.      On November 21, 2023, Mr. Umberg boarded Defendant's shuttle boat on Little Palm Island to return to the mainland at the end of his work shift.

9.      While approaching the dock on the mainland, the Defendant's Captain caused the shuttle boat to collide with a docked boat.

10.      Instead of the Defendant's Captain operating the shuttle boat until it was safely tied up at the dock, the Captain prematurely disembarked the shuttle boat to attend to the boat he collided.

11.      Defendant's Captain surrendered control of the shuttle vessel to a bartender employed by Defendant, who is not believed to possess a valid Captains' License issued by the United States Coast Guard.

12.      Defendant's bartender navigated the shuttle boat to an area of the dock where passengers are generally not allowed to disembark.

2

13.     Neither Defendant's written handbook nor policies specify when or how employees are to disembark from the shuttle boat at the mainland.

14.     Upon disembarking from the shuttle boat at the mainland, Mr. Umberg tripped, fell, and injured himself.

15.     Mr. Umberg returned to work the following day, but his right shoulder hurt and his pain escalated.

16.     On November 23, 2023, Mr. Umberg reported to his supervisor, Katrisha Johnson, that he injured his right shoulder in the fall he suffered on November 21, 2023, and she completed a written report regarding the incident and Mr. Umberg's injury.

17.     Defendant notified its' workers' compensation insurance carrier of Mr. Umberg's work-related injury by phone on November 23, 2023.

18.     Afterward, Ms. Johnson told Mr. Umberg Defendant's Human Resources Department reviewed the video depicting the incident, and that she was directed to issue him a Progressive Disciplinary Action for "violating safety protocol by jumping off the back of the boat before being given the 'all clear' that the boat was secured," which Mr. Umberg signed:

Associate Signature                    11/23/23
                                       Date

Department Head                        11/23/23
                                       Date

Human Resources                        11/27/2024
                                       Date

19.     Mr. Umberg worked the following day, November 24, 2023, but was not scheduled to work and did not work on November 25-26, 2023.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884  FAX 305.230.4844
www.fairlawattorney.com

20.     When Mr. Umberg returned to work on November 27, 2023, Ms. Johnson told Mr. Umberg that he was required to sign some additional documents requested by the Human Resources Department.

21.     Personnel from Defendant's Human Resources Department then began interrogating Mr. Umberg about the incident.

22.     Defendant terminated Mr. Umberg's employment on November 29, 2023, and the Personnel Action Form identified the reason for his termination as "Violation of Safety Procedure."

23.     Mr. Umberg hired counsel, who filed an administrative claim for workers' compensation benefits under Chapter 440, Florida Statutes, upon filing a Petition for Benefits on January 19, 2024, which was assigned OJCC Case No. 24-001581SMS.

24.     In response to the discovery requested by Mr. Umberg's workers' compensation counsel, Defendant produced two additional adverse employment actions purportedly taken:

   a.  A "Record of Work Discussion" dated September 8, 2023 that was not signed by Mr. Umberg or his manager:

Signed by: _____                    _____
                    Employee/ Date                                        Manager /Date

   b.  A "Record of Work Discussion" dated October 12, 2023, Mr. Umberg did not sign that but which was purportedly "signed" by his manager:

Signed by: _____                    Kat Johnson 10/17/23
                    Employee/ Date                                        Manager /Date

25.     Mr. Umberg did not receive either "Record of Work Discussion" on or about the dates indicated, nor did anyone discuss the issues identified with him, as each "Record of Work Discussion" was fabricated and false.

4

26.     The two "Record of Work Discussion" documents were fabricated so Defendant could claim Mr. Umberg was fired for cause based on the progressive discipline system identified in its handbook.

27.     The Defendant previously gave Mr. Umberg a card thanking him for his one year of service and included $100 as a token of appreciation for his work.

28.     On December 7, 2023, Defendant filed a Notice of Denial in response to the Petition for Benefits, wherein it denied his ability to recover "Indemnity" as follows:

> REASON FOR DENIAL OF BENEFITS (Provide detailed information to support reason(s) for denial)
> Mr. Umberg was terminated for cause and no indemnity is due. Right to amend is reserved.

29.     Mr. Umberg received medical care and treatment for his work-related shoulder injury.

30.     After the parties litigated Mr. Umberg's workers' compensation claim, they settled his work-injury claims at mediation, signed a "mediation agreement," and then signed additional documents related to the settlement of his workers' compensation claim.

31.     All conditions precedent were performed by Mr. Umberg, have occurred, or were waived by Defendant.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

## <u>COUNT I – VIOLATION(S) OF FLA. STAT. §440.205</u>

Plaintiff, Michael Umberg, reincorporates all preceding paragraphs as though set forth fully herein and further alleges as follows:

32.     Plaintiff had a good employment history with Defendant before suffering his work-related accident, and he performed his work duties properly and satisfactorily at all times material to this action.

33.     Besides his hourly pay of $18.54, the overtime pay he received for routinely working more than 40 hours a week for Defendant, Mr. Umberg received additional work-related benefits that included:

  a.  group health, life, dental, and supplemental insurances;
  b.  paid time off;
  c.  401k plan with an employer match;
  d.  one to two meals per day; and
  e.  ability to stay at Defendant's other properties for $75 per night.

34.     Mr. Umberg engaged in protected activity under the Florida Workers' Compensation Act, as set forth in detail above.

35.     As a direct and proximate result of Mr. Umberg making and pursuing a valid claim for Workers' Compensation benefits, Defendant took retaliatory actions against him that included but were not limited to creating two false and/or phantom "Record of Work Discussions" and terminating his employment less than a week after he reported his work-related injuries to Defendant and requested medical care and treatment from it.

36.     Plaintiff lost his job, wages, fringe and employment-related benefits, paid time off, and suffered emotional distress, humiliation, mental anguish, and was damaged as a direct and proximate result of Defendant's unlawful, retaliatory conduct described above, suffering damages exceeding $100,000.

6

37.     The Defendant's retaliatory actions against Mr. Umberg were designed to discourage its employees from claiming (or attempting to claim) workers' compensation benefits when suffering work-related injuries.

38.     Defendant intentionally and maliciously intended to discourage and coerce Mr. Umberg from making and pursuing a claim for workers' compensation benefits, and it retaliated against him for attempting to pursue and then pursuing his claim for workers' compensation, in part due to the financial impact a claim would have on the Defendant's workers' compensation premiums.

39.     Defendant's retaliatory actions described above were either intended, designed, or would have the effect of prolonging and exaggerating Mr. Umberg's pain and suffering.

40.     Considering the severity of Defendant's retaliatory actions, which included place two false and/or phantom "Record of Work Discussions" in his personnel file and then firing Mr. Umberg based on a fraudulent and fabricated basis, so soon after he reported his work-related injuries and requested medical care and treatment, when measured against the bounds of decency, and the injuries, pain, suffering, mental anguish, emotional distress, and the intended adversity that Defendant intentionally caused Mr. Umberg, punitive damages are properly awarded to Mr. Umberg and against the Defendant.

WHEREFORE Plaintiff, Michael Umberg, demands the entry of a judgment in his favor and against Defendant, Noble House Hotels & Resorts, LTD., after trial by jury for reinstatement, compensatory damages including lost benefits, lost seniority rights, lost wages, mental anguish, pain and suffering, and other remuneration (including for his employment-related benefits and fringe benefits), punitive damages, costs, all interest allowed by law, and for such other and further relief as the Court deems just and proper.

7

<u>COUNT II – DECLARATION OF RIGHTS</u>

Plaintiff, Michael Umberg, reincorporates and re-alleges paragraphs 1 through 31 as though set forth fully herein, and further alleges as follows:

41.     Mr. Umberg pursued a claim for workers' compensation benefits in OJCC Case No. 24-001581SMS ("WC Case") against the Defendant.

42.     Upon resolving his WC Case with the Defendant at mediation, Mr. Umberg, his counsel, and defense counsel (as the Defendant's agent) signed the "mediation agreement" appended hereto as Exhibit "A" (redacted as to the amount of the settlement).

### A. Intended Exclusion From Waiver and Release

43.     In the "mediation agreement," Mr. Umberg, his counsel, and defense counsel as agents for the Defendant agreed that "Claimant agrees to execute a General Release, with a carve-out for a 440.205 claim only, and separation agreement, with an agreement not to seek re-hire" in resolving the WC Case. *Id.*

44.     The signed "mediation agreement" contains the agreement by the parties and their counsel to exclude from the releases (and not resolve or waive) any claim by Mr. Umberg under Fla. Stat. §440.205 ("Claimant agrees to execute a General Release, with a carve-out for a 440.205 claim only, and separation agreement, with an agreement not to seek re-hire.") (Exhibit "A.")

### B. Defendant Mistakenly Prepared Documents That Included No Exclusion

45.     The parties in the WC Case then exchanged various documents to formalize their settlement and request the Administrative Judge to approve the settlement of his WC Claim.

46.     Defendant prepared and then Mr. Umberg and Defendant signed the "Full Release" appended hereto as Exhibit "B" (Redacted as to amount) and the "Separation and Release Agreement" appended hereto as Exhibit "C" to resolve the WC Case.

8

47.     Defendant's counsel drafted and proposed the "Full Release" and the "Separation and Release Agreement" to Mr. Umberg and his counsel in the WC Case.

48.     The "Full Release" has the following issues:

    a.  It mistakenly omitted the language permitting Mr. Umberg to retain the ability to pursue a claim under Fla. Stat §440.205, as the parties had agreed at mediation and in the "mediation agreement;"

    b.  It mistakenly included a release of (i.e., failed to exclude or carve out) claims brought under Fla. Stat. §440.205 notwithstanding the parties' "mediation agreement" which specifically allowed Mr. Umberg to continue to pursue such a claim;

    c.  It did not include any language stating that it represented the entire agreement and understanding between the parties and so remained subject to the earlier-signed and earlier-agreed-upon "mediation agreement;" and

    d.  It did not include any statement that it superseded any prior agreement(s) and therefore, it remained subject to the earlier-signed and earlier-agreed-upon "mediation agreement."

(Exhibit "B.")

49.     The "Separation and Release Agreement" has the following issues:

    a.  It mistakenly omitted the language permitting Mr. Umberg to retain the ability to pursue a claim under Fla. Stat §440.205, as the parties had agreed at mediation and in the "mediation agreement;"

    b.  It inadvertently included a release of (i.e., failed to exclude or carve out) claims brought under Fla. Stat. §440.205 notwithstanding the parties' "mediation agreement" which specifically allowed Mr. Umberg to continue to pursue such a claim;

    c.  It failed to include any language stating that it represented the entire agreement and understanding between the parties and so remained subject to the earlier-signed and earlier-agreed-upon "mediation agreement;" and

    d.  It did not include any statement that it superseded any prior agreement(s) and therefore, it remained subject to the earlier-signed and earlier-agreed-upon "mediation agreement."

(Exhibit "C.")

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

## C. The Agreements Are Subject To The Mediation Agreement

50.      The parties disagree about whether the "Full Release" and "Separation and Release Agreement" are subject to the earlier-signed "mediation agreement" which states that Mr. Umber to pursue his claim under Fla. Stat. §440.205 based on the requirement that the "General Release" include "a carve-out for a 440.205 claim only...." (*Compare* Exhibit "A" with Exhibits "B" and "C.")

51.      The parties and their counsel signed the "mediation agreement" after negotiating the terms for the settlement of Mr. Umberg's WC Claim at mediation and after contemplating that the resolution would not adversely impact his ability to still pursue a claim against the Defendant under Fla. Stat. §440.205.

52.      Neither the "Full Release" nor "Separation and Release Agreement" contains language to prevent the terms of their "mediation agreement" from being incorporated into them; therefore, the "mediation agreement" is incorporated into the "Full Release" and "Separation and Release Agreement." (Exhibits "A", "B," and "C.")

53.      Mr. Umberg requests the Court to declare that the "Full Release" and "Separation and Release Agreement" must be read to include and not conflict with the "mediation agreement" and the parties' intention for "Claimant agrees to execute a General Release, with a carve-out for a 440.205 claim only." (Exhibits "A," "B," and "C.")

## D. The Agreements Are Subject To The Mediation Agreement

54.      The parties disagree about whether the "Full Release" and "Separation and Release Agreement" must be invalidated or reformed due to a mutual mistake that resulted in the parties' failure to expressly exclude from the waiver and releases given any claim brought by Mr. Umberg

10

under Fla. Stat. §440.205 based on the agreement they reached at mediation and the "mediation agreement" the parties to the WC Case signed. (*Compare* Exhibit "A" with Exhibits "B" and "C.")

55.     The parties and their counsel signed the "mediation agreement" after negotiating the terms for the settlement of Mr. Umberg's WC Claim and after contemplating that the resolution would not adversely impact his ability to still pursue a claim against the Defendant under Fla. Stat. §440.205. (Exhibit "A.")

56.     Neither the "Full Release" nor "Separation and Release Agreement" contains language to prevent the terms of their "mediation agreement" from being incorporated. (Exhibits "B" and "C.")

57.     Thus, Mr. Umberg requests the Court to either invalidate the "Full Release" and "Separation and Release Agreement" for not including the material term identified in the "mediation agreement" that "Claimant agrees to execute a General Release, with a carve-out for a 440.205 claim only" or reform the "Full Release" and "Separation and Release Agreement" to include the material term identified in the "mediation agreement" that "Claimant agrees to execute a General Release, with a carve-out for a 440.205 claim only" (Exhibits "A," "B," and "C.")

### E. Failure To Comply With OWBPA

58.     Mr. Umberg was over 60 years old at all times material to this case.

59.     Neither the "Full Release" nor the "Separation and Release Agreement" contains language that would operate to waive, release, and extinguish any claim Mr. Umberg could bring for age discrimination under "the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. Section 623." (Exhibits "B" and "C.")

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

60.    Under the Older Workers' Benefit Protection Act of 1990 ("OWBPA"), codified at 29 U.S.C. §626, the only way an employee can waive an ADEA claim against an employer is through a "knowing and voluntary" waiver, occurring as follows:

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this chapter;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)

(i) the individual is given a period of at least 21 days within which to consider the agreement or

(ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

29 U.S. Code §626(f)(1).

61.    The parties disagree about whether the Defendant's failure to comply with the requirements of the OWBPA invalidates the "Full Release" and the "Separation and Release Agreement" and all waivers and releases given therein.

62.    Mr. Umberg requests the Court to declare that the releases he gave in the "Full Release" are invalid due to its failure to comply with the OWBPA:

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4884
www.fairlawattorney.com

    a.  The "Full Release" also does not state that Mr. Umberg was entitled to consider it for 21 days because he was not given 21 days to consider it; and

    b.  The "Full Release" does not state that Mr. Umberg could revoke his acceptance within 7 days after signing it because he was not given the ability to do so;

    c.  The "Separation and Release Agreement" does not refer to the OWBPA; and

    d.  The "Full Release" does not contain any severability or savings clause.

(Exhibit "B.")

63.    Mr. Umberg also requests the Court to declare that the releases he gave in the "Separation and Release Agreement" are invalid due to its failure to comply with the OWBPA:

    a.  The "Separation and Release Agreement" does not state that Mr. Umberg was entitled to consider it for 21 days because he was not given 21 days to consider it;

    b.  The "Separation and Release Agreement" does not state that Mr. Umberg could revoke his acceptance within 7 days after signing it because he was not given the ability to do so;

    c.  The "Separation and Release Agreement" also provides that "no promise or inducement not made herein expressed has been made, and that I am not relying on any statement or representation…" by anyone else as an inducement to sign the document.

(Exhibit "C.")

### F. The "Separate Consideration" Was Not Paid

64.    Mr. Umberg received the funds identified in and required by the "Full Release" for resolving his workers' compensation claim, as the only money received through the settlement of his WC Case (or in connection with the agreements signed related there), which the "Full Releas" identified as being attributable to the following:

    a.  Past and future compensation benefits

    b.  Future medical expenses for non-medicare covered items

    c.  Past future medical expenses, vocational retraining, physical and other types of rehab

13

      d.   Attorney fees and costs

(Exhibit "B")

65.     The "Separation and Release Agreement" provided for Mr. Umber to receive an additional $100 as "valuable and separate consideration". (Exhibit "C" at 5.)

66.     Defendant never paid Mr. Umberg the $100 identified as the additional "separate consideration" for signing the "Separation and Release Agreement" and Mr. Umberg never received the additional $100 as the "separate consideration" required thereunder. (Exhibit "C".)

67.     The parties disagree about whether the Defendant's failure to pay Mr. Umberg the additional, $100 as the "separate consideration" required by the "Separation and Release Agreement" renders the waiver and releases given in the "Separation and Release Agreement" unenforceable for lack of consideration.

68.     Mr. Umberg requests the Court to declare the "Separation and Release Agreement" invalid for lack of consideration.

### G. Relief Requested

69.     Mr. Umberg requests the Court issue a declaration under Fed. R. Civ. P. 57 on an expedited basis:

70.     Mr. Umberg is not seeking an advisory opinion from the Court but to address a present controversy involving the parties to this case.

71.     Mr. Umberg retained the undersigned counsel and is obligated to pay a fee for all services rendered herein.

WHEREFORE Plaintiff, Michael Umberg, requests the Court to enter a judgment in his favor and against Defendant, Noble House & Resorts, LTD., as follows:

14

a. Declaring the "mediation agreement" is incorporated into and modifies the "Full Release" and "Separation and Release Agreement" to allow Mr. Umberg to pursue his claim under Fla. Stat. §440.205 based on the earlier-signed "mediation agreement;

b. Declaring that the parties mistakenly failed to exclude Mr. Umberg's claim under Fla. Stat. §440.205 from the releases given in the "Full Release" and "Separation and Release Agreement" and so his claim under Fla. Stat. §440.205 was not waived due to the mutual mistake of the parties;

c. Declaring the "Full Release" and "Separation and Release Agreement" reformed to include the "carve out" required by the "mediation agreement" to allow Mr. Umberg to pursue his claim under Fla. Stat. §440.205 due to the mutual mistake of the parties;

d. Declaring the "Full Release" is void for failing to comply with the OWBPA;

e. Declaring the "Separation and Release Agreement" is void for failing to comply with the OWBPA;

f. Declaring the "Separation and Release Agreement" cannot be enforced due to the failure to pay the consideration required therein;

g. Awarding him attorney's fees and costs from Defendant, Noble House & Resorts, LTD., and

h. Awarding him such other and further relief as the Court deems just and proper.

## COUNT III – EQUITABLE RELIEF

Plaintiff, Michael Umberg, reincorporates and re-alleges paragraphs 1 through 31 as though set forth fully herein and further alleges as follows:

72.     Mr. Umberg seeks equitable relief related to the "Full Release" and the "Separation Agreement and Release" through rescission or reformation.

73.     Mr. Umberg pursued a claim for workers' compensation benefits in the WC Case against the Defendant.

### A. Intended Exclusion From Waiver and Release

74.     In the "mediation agreement," Mr. Umberg, his counsel, and defense counsel as agents for the Defendant agreed that "Claimant agrees to execute a General Release, with a carve-

15

out for a 440.205 claim only, and separation agreement, with an agreement not to seek re-hire" in resolving the WC Case. (Exhibit "A".)

75.    The signed "mediation agreement" contains the agreement by the parties and their counsel to exclude from the releases (and not resolve or waive) any claim by Mr. Umberg under Fla. Stat. §440.205 ("Claimant agrees to execute a General Release, with a carve-out for a 440.205 claim only, and separation agreement, with an agreement not to seek re-hire.") (Exhibit "A.")

### B. Defendant Mistakenly Prepared Documents That Included No Exclusion

76.    The parties in the WC Case then exchanged various documents to formalize their settlement and request the Administrative Judge to approve the settlement of his WC Claim.

77.    Defendant prepared and then Mr. Umberg and Defendant signed the "Full Release" appended hereto as Exhibit "B" (Redacted as to amount) and the "Separation and Release Agreement" appended hereto as Exhibit "C" to resolve the WC Case.

78.    Defendant's counsel drafted and proposed the "Full Release" and the "Separation and Release Agreement" to Mr. Umberg and his counsel in the WC Case.

79.    The "Full Release" has the following issues:

    a.  It mistakenly omitted the language permitting Mr. Umberg to retain the ability to pursue a claim under Fla. Stat §440.205, as the parties had agreed at mediation and in the "mediation agreement;"

    b.  It mistakenly included a release of (i.e., failed to exclude or carve out) claims brought under Fla. Stat. §440.205 notwithstanding the parties' "mediation agreement" which specifically allowed Mr. Umberg to continue to pursue such a claim;

    c.  It did not include any language stating that it represented the entire agreement and understanding between the parties and so remained subject to the earlier-signed and earlier-agreed-upon "mediation agreement;" and

16

    d.  It did not include any statement that it superseded any prior agreement(s) and therefore, it remained subject to the earlier-signed and earlier-agreed-upon "mediation agreement."

(Exhibit "B.")

80.    The "Separation and Release Agreement" has the following issues:

    e.  It mistakenly omitted the language permitting Mr. Umberg to retain the ability to pursue a claim under Fla. Stat §440.205, as the parties had agreed at mediation and in the "mediation agreement;"

    f.  It inadvertently included a release of (i.e., failed to exclude or carve out) claims brought under Fla. Stat. §440.205 notwithstanding the parties' "mediation agreement" which specifically allowed Mr. Umberg to continue to pursue such a claim;

    g.  It failed to include any language stating that it represented the entire agreement and understanding between the parties and so remained subject to the earlier-signed and earlier-agreed-upon "mediation agreement;" and

    h.  It did not include any statement that it superseded any prior agreement(s) and therefore, it remained subject to the earlier-signed and earlier-agreed-upon "mediation agreement."

(Exhibit "C.")

## C. The Relief Requested

81.    The "Full Release" and "Separation and Release Agreement" must be reformed to carve out (exclude) Mr. Umberg's claim under Fla. Stat.§440.205 and permit him to pursue this claim against Defendant based on a mutual mistake that resulted in the parties' failure to expressly exclude from the waiver and releases given any claim brought by Mr. Umberg under Fla. Stat. §440.205. (*Compare* Exhibits "A" and "B".)

82.    Likewise, no party will be harmed in reforming the "Full Release" and "Separation and Release Agreement" to "carve out" Mr. Umberg's claim under Fla. Stat. §440.205 against Defendant to conform it to the "mediation agreement."

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884  FAX 305.230.4844
*www.fairlawattorney.com*

83.     The "Full Release" and "Separation and Release Agreement" must be rescinded due to a mutual mistake that resulted in the parties' failure to expressly exclude from the waiver and releases given any claim brought by Mr. Umberg under Fla. Stat. §440.205. (*Compare* Exhibits "A" and "B".)

84.     No party will be harmed in rescinding the "Full Release" and "Separation and Release Agreement" as Mr. Umberg has not since pursued any claim other than his claim under Fla. Stat. §440.205 against Defendant.

85.     Mr. Umberg retained the undersigned counsel and is obligated to pay a fee for all services rendered herein.

WHEREFORE Plaintiff, Michael Umberg, requests the Court to enter a judgment in his favor and against Defendant, Noble House & Resorts, LTD., as follows due to the mutual mistake of the parties:

a.   Reforming the "Full Release" and "Separation and Release Agreement" to "carve out" and permit Mr. Umberg to pursue his claim against Defendant under Fla. Stat. §440.205 by modifying the waivers and releases of claims therein to exclude any claim by Mr. Umberg under Fla. Stat. §440.205;

b.   Rescinding the "Full Release" and "Separation and Release Agreement" in whole or in part based so that Mr. Umberg can pursue a claim under Fla. Stat. §440.205;

c.   Awarding him attorney's fees and costs from the Defendant, and

d.   Awarding him such other and further relief as the Court deems just and proper.

Dated this 16th day of December 2024.

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Suite 770
Coral Gables, Florida 33146
Tel: 305.230.4884